Hildegard M. TRAPNELL, et al.

v.

UNITED STATES of America.

Civil No. S 95–1471.

United States District Court,
D. Maryland,
Northern Division.

June 3, 1996.

Glenn L. Klavans, Murphy & Klavans, Severna Park, MD, for plaintiffs.

Lynne A. Battaglia, United States Attorney, Charles J. Peters, Assistant United States Attorney, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case is before the Court on the defendant's motion for summary judgment. No oral hearing is necessary. Local Rule 105.6, D.Md.

The theory of plaintiff's FTCA (28 U.S.C. § 2671 et seq.) claim is that a physician at the Veterans Administration's Medical Center (VAMC), Baltimore, Maryland, failed in the duty of furnishing appropriate medical care to the decedent, viz., by not hospitalizing him, which proximately caused his suicide on the very same day he was seen as an outpatient there, June 18, 1992.

■ It is, of course, well-settled that the substantive law of the forum state (here Maryland) governs the Court's disposition of an FTCA case, while federal procedural law is to be applied.

■ The opponent of a motion for summary judgment, under Fed.R.Civ.P. 56, must come forward with evidence that, were the case at the directed verdict stage, could justify a reasonable factfinder in finding in the opponent's favor, under the applicable proof burden. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Otherwise, summary judgment will be granted, if the motion was properly supported. *Id.*

■ In this case, the Maryland law of negligence applies, and, in particular, the Maryland law of medical malpractice. The three elements that plaintiff must prove by a preponderance are the standard of local skill and care, the defendant care giver's failure to follow that standard, and · that such failure was a direct cause of the plaintiff's injury. *See, e.g., Johns Hopkins Hospital v. Genda,* 255 Md. 616, 258 A.2d 595 (1969). The element of proximate cause dictates, in the medical malpractice field, that "[d]amages are not proven [sic] when it is more likely than not that death was caused by the antecedent disease or injury rather than the negligence of the physician." *Fennell v. Southern Maryland Hospital,* 320 Md. 776, 791–92, 580 A.2d 206 (1990).

The Court of Appeals of Maryland has not specifically addressed the liability of a hospital for not admitting a patient who subsequently commits suicide. That court has, however, noted the general trend of the law in imposing liability for *foreseeable* suicides of persons over whom a hospital has "custody," but a corresponding trend to "rarely impose" liability for out-patient suicides. *Eisel v. Board of Education,* 324 Md. 376, 381–82, 597 A.2d 447 (1991).

■ In this case, the Court is of the opinion that the plaintiff could not, if the case were at the directed verdict stage, point to evidence upon which a reasonable factfinder could conclude by a preponderance that there was actionable medical negligence.

First, the hospital had no *statutory* duty to admit the plaintiff. Indeed, there is no evidence that he requested to be admitted when he visited the hospital on June 18 and was seen by the VA resident on duty, Dr. Jordan–Randolph. Evidence of what treatment his wife thought appropriate is obviously irrelevant on the issue of whether he desired admission as a voluntarily committed mental inpatient. There is also no direct evidence that, as of the time of the June 18 interview at the VAMC with the psychiatric resident, Dr. Jordan–Randolph, Mr. Trapnell's illness satisfied the criteria for involuntary admission set forth in Maryland law, at Md. Health–Gen.Code Ann. § 10–617. The plaintiff's expert's conclusion that he might have so satisfied the criteria is exposed as mere speculation when his deposition is examined, particularly at pages 80–82. In particular, when directly asked whether Mr. Trapnell should have been involuntarily committed if he refused admission, plaintiff's expert, Dr. Simon, answered *no,* going on to say that he would have called the treating psychiatrist, Dr. Smith, to come over to try to talk Mr. Trapnell into a voluntary admission. *Id.*

Even assuming that there were no statutory bar to Mr. Trapnell's involuntary admission, or even assuming there were evidence that he *wished* to be admitted, but was not, there is insufficient evidence in this case to generate a triable issue either on breach of duty of care or on foreseeability. The Court is aware that plaintiff's expert, Dr. Simon, has given his expert opinion that the psychiatric work-up done by the treating physician, Dr. Gayle Jordan–Randolph, constituted a breach of the appropriate standard of care. The statement in Dr. Simon's opinion letter of December 14, 1995, as to causation states simply, "As the result of a substandard evaluation done by Dr. Jordan–Randolph, Mr. Trapnell was not hospitalized and committed suicide." When examined, again in context of Dr. Simon's deposition, it becomes apparent that this conclusory statement, in light of the facts given in support of it at deposition, could not support a reasonable factfinder's finding for the plaintiff un-

der the appropriate Maryland standard, as established in *Fennell, supra.* Particularly, having stated at page 80 that Mr. Trapnell should not have been involuntarily committed had he refused admission, Dr. Simon goes on to lay out a number of specific scenarios for what amounts to an irregular involuntary detention of the patient until he would agree to a voluntary admission. Similarly, there is simply insufficient evidence in Dr. Simon's deposition to show that a more thorough psychiatric work-up would have increased the likelihood of hospitalization. The work-up done by Dr. Jordan–Randolph took into account the fact that plaintiff had been drinking, and that he denied present auditory or visual hallucinations as well as symptoms of depression or mania. Specifically, the plaintiff denied any suicidal or homicidal ideas, and no one informed Dr. Jordan–Randolph that he had such ideas. The record also indicates that Dr. Jordan–Randolph attempted to obtain prior hospital records and to consult with one of the attending physicians during Mr. Trapnell's most recent admission, but the records could not be obtained, nor an attending physician reached, at the time Mr. Trapnell came in simply "requesting to see psychiatry regarding depression." Dr. Jordan–Randolph was neither free nor obligated to hold Mr. Trapnell in limbo indefinitely while waiting for responses to her queries.

Under all the circumstances, the Court is of the opinion that, given the well-supported expert opinion of Dr. Schmidt that there was no breach of care, and given the plaintiff's failure to come forward with evidence under *Fennell* that could justify a reasonable factfinder in concluding that the non-admission of the plaintiff was a 51 per cent or more cause of his suicide—and thus foreseeable under Maryland law—there is simply no triable case on the defendant's negligence.

The Court recognizes that this is an extremely sad case. The plaintiff was a brilliant man, having graduated second in his class from the Naval Academy and having worked many years for the Government in a responsible capacity. However, he had mental problems early on, even during his midshipman years, which continually plagued him, together with severe alcohol problems, and for which he was treated by, among others, the defendant. The law, as set forth above, recognizes that the vagaries of human conduct, especially conduct leading to self-destruction, are so unpredictable as to warrant great caution in imposing liability on the care-giver in the event of a patient's suicide when not in the care-giver's actual physical custody. Even if the patient is in custody, there is no liability absent the requisite foreseeability and proximate cause. The Court is convinced that the Court of Appeals of Maryland, on the facts presented here, would exercise the same caution in refusing to impose liability upon the care-giver who makes a medical judgment not to take the patient into custody in the first place.

For all these reasons, the defendant's motion for summary judgment will be granted, by a separate Order.

### *ORDER AND JUDGMENT*

For the reasons stated in the foregoing Memorandum Opinion entered herewith, it is this 3rd day of June, 1996, by the Court, ORDERED and ADJUDGED:

1.   That the defendant's motion for summary judgment BE, and the same hereby IS, GRANTED;

2.   That judgment BE, and it hereby IS, entered in favor of the defendant, and against the plaintiffs; and

3.   That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.